Good morning, your honors. The Jack Stanfill case is a case where my client was a whistleblower, a complainer, a person who tried to force the Puget Sound Naval Shipyard. Excuse me, the acoustics are bad in here, and it sounds like I'm listening on a bad cell phone connection. Sorry. Jack Stanfill was a whistleblower and a complainer at Puget Sound Naval Shipyard. He made numerous complaints about safety violations. He was very safety-oriented. It looks to me like they fired him because he basically didn't come to work regularly for two years. He said, the reason I don't come to work regularly is I get kind of stressed out because I don't like my boss or some of the people I have to work with or under, and I just leave when I can't handle it, and you should accommodate me by accommodating my not coming to work for two years. Actually, what am I missing here? I mean, that looks really bad. I understand why that would look just really bad. But for two years, they allowed that very accommodation without any question whatsoever. It was allowed. He took time off without pay. It didn't cost the Navy time when he took time off without pay. He was making complaints about safety issues. So we should just pay taxes for the government to employ people that don't come to work for two years? It doesn't cost him anything when he doesn't come to work. There is no tax paid because he doesn't get paid when he's on leave without pay status. However, he did request accommodation. He requested it repeatedly. And the one issue that I think is most important before this Court is the fact that the Puget Sound Naval Shipyard never met and engaged in an interactive process with him to consider his requested accommodations or what other accommodations might be available because he also requested potential transfers to other shops. They never looked to see if other places were available. I would also point out my client's now disability retired from the shipyard on stress, the very issue that was at issue here. It had a significant impact on his life. I would also say that we believe there was substantial retaliation, and the retaliation was based on his having gone forward and notified OSHA when an employee was killed because they didn't follow the very procedure he asked them to follow. What is the major life activity that he can't do because of his disability? He can't work. He's repairing on stress. I thought he could maybe work for other people, just not these people. He has now been retrained and is going into woodworking. That's not correct. But he can do other kinds of work. He just can't work for a boss that he hates. It doesn't look like it's a disability that impedes a major life activity. I think that's the wording that... He was suffering so much stress that he ended up getting hospitalized, that he was away from work. That's not the point. You can feel that way about your boss, really hate your boss's guts, and it can cause a stomach problem. But it's not a disability because if you work for a nice person, you wouldn't have that. But it is a disability when they won't accommodate you and you've requested the accommodation, including the possibilities of transfer, which were never looked at. This court, he said in a case in 2001... No, it isn't. You don't get to the accommodation unless you have the disability. And for it to be a disability, it has to affect a major life activity, not just performance of the particular job. But it did affect a major life activity. He wasn't able to work. He actually ended up homesick. He ended up in the hospital. He ended up having to be treated by physicians and counselors. He could not go to work or continue working because of the retaliation and the harassment that was going on at work, which is significantly different than just not liking your boss. This is a man who... Connected ground was the harassment about. He had represented people as an EEO representative and they didn't like it because he was successful. He had reported safety violations and had brought grievances over safety violations and he was successful. And they didn't like it. The head of the civilian department at the shipyard was forced to sign an EEO acknowledging willful violation of standards as a result of my client's specific complaints and providing documentation to OSHA of the numerous complaints and attempts he'd made to get PSNS to correct their safety issue on lockout tagout that resulted in the death of an employee down in San Diego. So is this retaliation for his, for the rights that he exercised under OSHA? It is retaliation for his EEO complaints, his EEO activities and his OSHA complaints and activities that resulted in the shipyard being sanctioned. And so the statute that bars that kind of retaliation is what? Well, number one on EEO, they can't take retaliatory action for either representing or for filing EEO complaints and he filed numerous ones. Okay. I'm having trouble following your claim of retaliation because of whistleblowing. Was the district court wrong in saying that because of the 45-day rule under 29 CFR 1614.105A, the only claim that was exhausted was that claim set out in this gentleman's February 15th letter, which was that he was terminated because of a disability. Your Honor, that is actually a correct statement. So then let's forget all the whistleblowing stuff, right? All right. The only thing here is that he was terminated because of a disability. They didn't give him an accommodation because he was stressed out. And I would point out to the court, Vincent v. Thomas, which is reported at 288 F. 3rd 1145, a 2001 case or 2002 case from this circuit that talked about the duty of the employer to enter into interactive communication with the employee to see whether or not accommodation could be provided, something that was never done in this case ever. Well, but following up on what Judge Kleinfeld said, if the only claim here is failure to accommodate because of his disability and there's no proof that he has a major life activity impeded because he can work, but just not for this boss, this boss causes stress, then why don't you lose? Because they have accommodations available. He literally couldn't work because of what was going on. You don't have to accommodate except after proof of a disability. First disability, then accommodation. Isn't that right? But when you suggest that there's a disability and you've requested accommodation, they have an obligation to enter into that interactive process. And they never did it. They never talked to him. As is plain here that this gentleman can't work, but not for this boss. Then he doesn't have a major life activity which is impeded. He's not disabled. You don't have to have the interactive consultation, and you don't have to offer the accommodation. It all pivots on the issue of whether he's disabled. Isn't that right? All right. Based on that, then one of the things I would point out to you is that, in fact, he was disabled, that he didn't and couldn't work, that he ended up even being hospitalized because of the stressors. So you say the district court was wrong in finding that, on summary judgment, that he was not disabled? Yes, I do. I don't get that. There's a Seventh Circuit case that puts it perhaps more clearly than I have to focus your attention on exactly what I don't get. I think one of the parties cited it, Weiler v. Household Finance. In that case, the woman's boss caused her stress and anxiety. It put her into the hospital. It put her under medical care. It made her sick, literally, physically. And the Seventh Circuit said the major life activity of working is not substantially limited if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance. Are you saying the Seventh Circuit is wrong and we should go a different way, or are you saying that your person at the time had a disability, even though it appears to have just been caused by the nature of the job and supervisor? Well, personally, I'd like to see you reverse and go the opposite direction of the Seventh Circuit because I think that line of cases is poor. Well, but you see, the only disability that he has here is inability to work in this job environment. It doesn't seem to be a disability that interferes with the major life function, like walking or hearing or vision or the usual disabilities that we deal with. So the question is whether that's really a disability. And, again, I would say that in this circumstance, they had at a minimum, at a minimum, an obligation to at least discuss options that would be available, and that they never told him how to show that he had a major life problem. Why did they have to do anything for him if he's not disabled under the Americans with Disabilities Act? Well, when a person has indicated they have a disability or they have a perceived disability and they've asked for accommodation to be able to work around the difficulties they're having, I believe that the proper course is for them to evaluate and give them the information as to what they need to provide. That may be very good workplace policy. The question we have is whether or not that is required under any of the statutes. But you're making the question when you say when I believe that he has a disability. The question is, does the Americans with Disability Act believe that he has a disability? But the agency never has an interactive process when he has the disability defined by statute. All right. You've more than used your time. Thank you. Good morning. May it please the public counsel, my name is Damian Midditt. I'm an assistant United States attorney appearing on behalf of the government. In this case, Your Honors, Mr. Stanfield claimed to suffer stress allegedly caused by conflicts with his supervisors and coworkers. Because he was stressed at work, he apparently believed that the Puget Sound Naval Shipyard had a legal obligation to provide whatever accommodation he requested. In this case, it was basically he wanted to be allowed to leave work whenever he felt stressed. Mr. Stanfield's argument is flawed on many levels. The Rehabilitation Act, as the Court well knows, is a very important piece of legislation designed to assist federal employees who are truly disabled to enable them to continue working, to be productively employed. It was never meant to enable an employee to avoid working. The major problem with Mr. Stanfield's case is that he was not disabled, at least during the relevant time period, as is defined by the Rehabilitation Act. He provided no medical documentation to the shipyard showing that he was substantially impaired in a major life activity. He provided no evidence to the district court that he was so impaired. And, in fact, he actually has not alleged that he's so impaired. In the record, there's excerpts from his deposition where he indicates that he isn't impaired and that actually he can work. He just doesn't want to work in this particular area when he has conflicts with a supervisor. That doesn't meet the definition. There was absolutely no violation of the Rehabilitation Act in this case. And I actually have nothing more to say. I would submit it on my brief, and then I'd be very happy to answer whatever questions the Court has. Otherwise, I would respectfully ask that Judge Layton's decision be affirmed. Thank you. Thank you very much. This argument is submitted for decision.
judges: Schroeder, Kleinfeld, Bea